IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| TYRON BURNS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 05-66-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

Tim Wilborn
Wilborn & Associates, P.C.
2020-C S. W. 8th Avenue, PMB #294
West Linn, Oregon  97068

      Attorney for Plaintiff

Karin J. Immergut
United States Attorney
District of Oregon
Neil J. Evans
Assistant United States Attorney
1000 S. W. Third Avenue, Suite 600
Portland, Oregon  97204-2902

Page 1 - OPINION AND ORDER

Nancy A. Mishalanie
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington  98104-7075

        Attorneys for Defendant

KING, Judge:

Plaintiff Tyron Burns brings this action pursuant to section 405(g) and 1383(c)(3) of the Social Security Act to obtain judicial review of a final decision of the Commissioner denying his application for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI").  I reverse and remand the decision of the Commissioner.

## BACKGROUND

Plaintiff filed applications for DIB and SSI on October 20, 2000.  The applications were denied initially and upon reconsideration.  After a timely request for a hearing, plaintiff, represented by counsel, appeared before an Administrative Law Judge ("ALJ").  On March 9, 2004, the ALJ issued a decision finding that plaintiff was not disabled within the meaning of the Act and therefore not entitled to benefits.  This decision became the final decision of the Commissioner when the Appeals Council declined to review the decision of the ALJ on November 26, 2004.

## LEGAL STANDARDS

The Social Security Act (the "Act") provides for payment of DIB to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1).  In addition, under the Act, supplemental security income benefits ("SSI")

Page 2 - OPINION AND ORDER

may be available to individuals who are age 65 or over, blind, or disabled, but who do not have

insured status under the Act.  42 U.S.C. § 1382(a).

The burden of proof to establish a disability rests upon the claimant.  <u>Gomez v. Chater</u>,

74 F.3d 967, 970 (9th Cir.), <u>cert. denied</u>, 519 U.S. 881 (1996) (DIB); <u>Drouin v. Sullivan</u>, 966

F.2d 1255, 1257 (9th Cir. 1992) (SSI).  To meet this burden, the claimant must demonstrate an

inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to cause death or to last for a continuous

period of at least twelve months.  42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  An individual

will be determined to be disabled only if his physical or mental impairments are of such severity

that he is not only unable to do his previous work but cannot, considering his age, education, and

work experience, engage in any other kind of substantial gainful work which exists in the

national economy.  42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for

determining if a person is eligible for either DIB or SSI due to disability.  20 C.F.R. §§ 404.1520

and 416.920; <u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1996) (DIB); <u>Quang Van Han v.</u>

<u>Bowen</u>, 882 F.2d 1453, 1456 (9th Cir. 1989) (SSI).  First, the Commissioner determines whether

the claimant is engaged in "substantial gainful activity."  If the claimant is engaged in such

activity, disability benefits are denied.  Otherwise, the Commissioner proceeds to step two and

determines whether the claimant has a medically severe impairment or combination of

impairments.  A severe impairment is one "which significantly limits [the claimant's] physical or

mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c) and 416.920(c).  If the

claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d) and 416.920(d).  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past.  If the claimant is able to perform work which he or she performed in the past, a finding of "not disabled" is made and disability benefits are denied.  20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience.  The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Distasio v. Shalala, 47 F.3d 348, 349 (9th Cir. 1995) (DIB); Drouin, 966 F.2d at 1257 (SSI).  The claimant is entitled to disability benefits only if he is not able to perform other work.  20 C.F.R. §§ 404.1520(f) and 416.920(f).

When an individual seeks either DIB or SSI because of disability, judicial review of the Commissioner's decision is guided by the same standards.  42 U.S.C. §§ 405(g) and 1383(c)(3). This court must review the case to see if the decision of the Commissioner is supported by

Page 4 - OPINION AND ORDER

substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion.  <u>Reddick v. Chater</u>, 157 F.3d 715, 720 (9th Cir. 1998).  It is more than a scintilla, but less than a preponderance, of the evidence.  <u>Id.</u>

Even if the Commissioner's decision is supported by substantial evidence, it must be set aside if the proper legal standards were not applied in weighing the evidence and in making the decision.  <u>Id.</u>  The court must weigh both the evidence that supports and detracts from the Commissioner's decision.  <u>Id.</u>  The trier of fact, and not the reviewing court, must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the Commissioner.  <u>Id.</u> at 720-21.

## FACTS

I.    <u>Burns's History</u>

Burns, who was 35 years old at the time of the hearing, alleges he suffers from attention deficit disorder (ADD), bipolar disorder, a degenerative spine disorder, birth defects, back pain, and arthritis.  Plaintiff obtained his GED.  At the time of the hearing, he had held 33 different jobs.

James Wahl, Ph.D., performed a psychological evaluation of Burns on October 4, 1996 and again on December 28, 2001.  At first, Dr. Wahl diagnosed plaintiff with bipolar disorder, probable attention deficit hyperactivity disorder as a child, and cocaine abuse in early full remission.  He later confirmed the bipolar disorder, added panic disorder with agoraphobia, and dropped the other diagnoses.  Referencing plaintiff's job history, Dr. Wahl opined, "This is a clear indication that, although he may not have any cognitive impairment, his bipolar disorder

Page 5 - OPINION AND ORDER

prevents him from persisting in or sustaining a work activity over extended periods.  It is also a

clear indication of repeated episodes of deterioration and decompensation in a work setting."  Tr.

375.  Dr. Wahl later estimated that plaintiff had experienced four or more episodes of

decompensation in a work-like setting.

On August 25, 1997, Gary Gregor, Ph.D., diagnosed plaintiff with bipolar disorder and

antisocial personality traits, noting the need to rule out attention deficit hyperactivity disorder.

Dr. Gregor commented that plaintiff was not attending treatment regularly, and had stopped

taking the Wellbutrin that had been prescribed for him.  Dr. Gregor opined that these were signs

of Burns's "chronic instability."  Tr. 233.  Dr. Gregor also noted that Burns is "unlikely to hold a

job, and even settle into a stable treatment program for his mental disorder . . . .  In my opinion,

he should be placed on SSI, with funds contingent on stable mental health treatment, including

consistent attendance for medication management."  Tr. 237.  Dr. Gregor also stated, "[G]iven

his age, and given the fact that he has taken some small steps towards stability in recent years, it

would be premature to define him as disabled."  Tr. 238.

Shireen Damania, M.D. saw plaintiff on July 30, 1999, and diagnosed him with an

occupational problem and unspecified alcohol abuse and poly-substance dependence in

remission, as well as personality disorder, not otherwise specified with antisocial features.  Dr.

Damania reported that Burns stated he is not permitted to make more than $500.00 a month as he

is receiving $96.00 a month in unemployment, so he cannot look for another job.  He also stated

that it is hard for him to find a job he likes.

On August 9, 2001, Charles Reagan, M.D., diagnosed Burns with probable attention

deficit hyperactivity disorder and obsessive/compulsive traits, with a need to rule out

somatization disorder.  He disagreed with the prior diagnoses of bipolar disorder.  Dr. Reagan

also stated, "The reliability issue suggests to me an exacerbation of symptoms, suggests

secondary gain is present and this needs to be taken into consideration."  Tr. 321.

II.    <u>The ALJ's Decision</u>

The ALJ found that plaintiff had physical and psychological impairments considered

severe within the meaning of 20 C.F.R. § 404.1520(b), including bipolar disorder/attention

deficit disorder and a personality disorder, as well as degenerative changes to the spine.

However, the ALJ did not find that these impairments met or medically equaled the requirements

of any of the impairments listed in Appendix 1, Subpart P of the Social Security Regulations.  In

addition, the ALJ found that Burns's allegations regarding his limitations were not totally

credible.

The ALJ determined that plaintiff can perform medium exertional level work.

Specifically, the ALJ found that Burns can lift/carry up to 50 pounds occasionally and up to 25

pounds frequently, can kneel, climb ropes and ladders occasionally, and can lift overhead with

the left extremity occasionally.  The ALJ determined that Burns should not be exposed to fumes

and gases due to his asthma.  Due to psychological impairments, the ALJ determined Burns was

limited to simple, routine tasks and instructions, and was precluded from having contact with the

general public.

Based on this residual functional capacity, and the testimony of the vocational expert

("VE"), the ALJ concluded that Burns could not perform any past relevant work.  However, the

ALJ found Burns could perform a significant number of jobs that exist in the national economy,

including a folding machine operator, bindery machine feeder, and wire worker.  Accordingly,

the ALJ found that plaintiff was not under a "disability" within the meaning of the Social

Security Act, at any time through his date last insured.

**DISCUSSION**

I.    Listing Determination

Burns complains that the ALJ did not properly and fully articulate his reasons for finding

that Burns's impairments did not meet or equal Listing 12.04(C).[1]  In addition, Burns argues the

ALJ improperly rejected the opinion of Dr. Wahl in determining that Burns did not meet or equal

Listing 12.04(C).  The Commissioner responds that the ALJ's summary of the medical evidence

was sufficient to meet his obligations in evaluating the Listing determination, that he properly

rejected Dr. Wahl's opinion, and that because Burns's symptoms are not "currently attenuated by

medication or psychosocial support" the ALJ properly found that Burns did not meet Listing

12.04(C).  Burns responds that the Commissioner's *post hoc* rationale means that the ALJ should

have evaluated whether Burns is disabled but for his noncompliance with treatment.

The listings set out at 20 CFR pt. 404, subpt. P, App. 1 are "descriptions of various

physical and mental illnesses and abnormalities, most of which are categorized by the body

---

[1]Listing 12.04(C) requires:

C.    Medically documented history of a chronic affective disorder of at least 2 years'
      duration that has caused more than a minimal limitation of ability to do basic
      work activities, with symptoms or signs currently attenuated by medication or
      psychosocial support, and one of the following:
      1.    Repeated episodes of decompensation, each of extended durations; or
      2.    A residual disease process that has resulted in such marginal adjustment
            that even a minimal increase in mental demands or change in the
            environment would be predicted to cause the individual to decompensate;
            or
      3.    Current history of 1 or more years' inability to function outside a highly
            supportive living arrangement, with an indication of continued need for
            such an arrangement.

system they affect." <u>Sullivan v. Zebley</u>, 493 U.S. 521, 529-30 (1990). For a claimant to show that his impairment matches one of those listed, the impairment must meet all of the specified medical criteria. <u>Id.</u> at 530. Alternatively, a claimant may show that his unlisted impairment is "equivalent" to a listed impairment, but to do so he must present medical findings equal in severity to all the criteria for the one most similar listed impairment. <u>Id.</u> at 531. Equivalence is determined on the basis of a comparison between the "symptoms, signs and laboratory findings" about the claimant's impairment as evidenced by the medical records "with the medical criteria shown with the listed impairment." 20 C.F.R. § 404.1526. If a claimant's impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without a determination whether he can actually perform prior work or other work. <u>Zebley</u>, at 532.

With regard to whether the ALJ adequately addressed Burns's argument that his impairments meet Listing 12.04, I find that he did. Although the case Burns relies on, <u>Marcia v. Sullivan</u>, 900 F.2d 172 (9th Cir. 1990), does indeed require the ALJ to provide more than a boilerplate statement as to his or her conclusion, "<u>Marcia</u> simply requires an ALJ to discuss and evaluate the evidence that supports his or her conclusion; it does not specify that the ALJ must do so under the heading 'Findings.'" <u>Lewis v. Apfel</u>, 236 F.3d 503, 513 (9th Cir. 2001). Here, the ALJ summarized the evidence, and then based on the evidence, itemized the potentially applicable Listing criteria explaining how Burns did not meet each one; he did so in the section of his opinion labeled "Evaluation of the Evidence." Tr. 21-22.

As for whether the ALJ properly concluded that Burns's impairments did not equal Listing 12.04(C), the key is whether the ALJ properly or improperly rejected the opinion of Dr.

Page 9 - OPINION AND ORDER

Wahl.  Dr. Wahl was the only psychologist to present a medical opinion that plaintiff

experienced periods of decompensation,[2] based on plaintiff's history of quitting jobs, and that

even a minimal increase in mental demands would cause plaintiff to decompensate.  The ALJ

rejected these conclusions, finding that the evidence suggested instead that Burns's job history

reflected his lack of motivation.  The ALJ referred to a later section of his opinion to support his

rejection of Dr. Wahl's opinions.  The ALJ concluded that Burns had experienced only one or

two episodes of substantial decompensation, and therefore his impairments did not equal Listing

12.04(C).

      The weight given to the opinion of a physician depends on whether the physician is a

treating physician, an examining physician, or a nonexamining physician.  Lester v. Chater, 81

F.3d at 830.  More weight is given to the opinion of a treating physician because the person has a

greater opportunity to know and observe the patient as an individual.  Id.; Smolen v. Chater, 80

F.3d 1273, 1285 (9th Cir. 1996).  If a treating or examining physician's opinion is not

contradicted by another physician, the ALJ may only reject it for clear and convincing reasons.

Even if it is contradicted by another physician, the ALJ may not reject the opinion without

providing specific and legitimate reasons supported by substantial evidence in the record.  Lester,

81 F.3d at 830.  The opinion of a nonexamining physician, by itself, is insufficient to constitute

substantial evidence to reject the opinion of a treating or examining physician.  Id. at 831.

      The ALJ relied on the report of Shireen Damania, M.D., an examining psychiatrist, to

find that Burns's job history was associated with motivational problems as opposed to periods of

---

[2]Decompensation is defined to mean, "Loss of physiological compensation or
psychological balance."  Merriam Webster's Medical Desk Dictionary, at 189 (1996).

decompensation.[3]  Dr. Damania reported that Burns stated he could not look for work because he

was not allowed to make more than $500 a month or he would lose his weekly unemployment

check of $96.  Burns also stated that it was hard to find a job he liked.  The ALJ pointed to the

fact that both Dr. Damania and Charles P. Reagan, M.D., another examining psychiatrist, noted

that Burns was comfortable around each of them, despite Burns's statements that he does not like

to be around people.  As evidence of his comfort-level, the ALJ noted that emergency medical

records reflected that Burns had been out drinking with his buddies when he got a quarter stuck

in his esophagus.  The ALJ also relied on Burns's statements to his mental health counselor that

he does not like to work for anyone, does not like the daily routine, and since money is not very

important to him, he usually quits after one or two months.  Finally, the ALJ reported that Dr.

Reagan opined Burns's "reliability issue suggests to me an exacerbation of symptoms, suggests

secondary gain[4] is present and this needs to be taken into consideration."  Tr. 24, 321.[5]

     The ALJ's summary of this evidence provides clear and convincing reasons, supported by

substantial evidence, for rejecting Dr. Wahl's opinion that Burns's job history is evidence of

decompensation events.  The ALJ's discussion of this evidence, when imported into the section

of the ALJ's opinion evaluating the Listing criteria (as intended by the ALJ), demonstrates that

---

[3]There is no indication in the ALJ's opinion that he relied on the opinion of Robert
Henry, Ph.D., contrary to the Commissioner's assertion.

[4]Secondary gain is defined to mean, "a benefit (as sympathetic attention) associated with
a mental illness."  Merriam Webster's Medical Desk Dictionary at 730.

[5]I am not convinced by plaintiff's argument that this opinion of Dr. Reagan's was made in
the context of his comment that Burns may be suffering from somatization disorder; such a
conclusion is purely supposition.  Rather, it is just as likely that the ALJ is correct that Dr.
Reagan's comment is directed at plaintiff's motivation or lack thereof.

the ALJ sufficiently evaluated the evidence before concluding that Burns's impairments did not equal Listing 12.04(C). Since the ALJ rejected Dr. Wahl's opinion, the ALJ in effect found that Burns did not suffer from repeated episodes of decompensation, or that a minimal increase in mental demands would cause decompensation, and therefore the ALJ properly concluded that Burns's impairments are not equal in severity to Listing 12.04(C).

I agree with Burns that the ALJ did not focus his conclusion on the fact that plaintiff "does not meet paragraph (C) of Listing 12.04 because his symptoms and signs are not 'currently attenuated by medication or psychosocial support.'" Defendant's Brief at 11. Accordingly, I need not address plaintiff's argument that the ALJ should have found plaintiff disabled and referred for development of failure to follow prescribed treatment, pursuant to SSR 82-59. As stated above, it is apparent that the ALJ focused his evaluation of the Listing criteria on periods of decompensation.

The ALJ did not err in determining that Burns's impairments did not meet or equal Listing 12.04(C).

II.    Medical Evidence

In addition, to challenging the ALJ's rejection of a portion of Dr. Wahl's findings, which I have resolved in the Commissioner's favor above, Burns complains that the ALJ improperly rejected the opinions of Gary Gregor, Ph.D. Dr. Gregor concluded that Burns's "presentation here was quite reminiscent of people with Bipolar Disorder, in that he wants a stable life, but the fact of his instability of mood and behavior interferes greatly with his own goals. For example, it is unlikely that he is able to hold a job, and even settle into a stable treatment program for his

mental disorder." Tr. 237.  Dr. Gregor opined that Burns should be placed on SSI, with funds contingent on mental health treatment.

Although the ALJ adopted Dr. Gregor's conclusion that Burns suffers from a "severe impairment in the nature of a bipolar disorder/attention deficit disorder or personality disorder," Tr. 20, the ALJ did not discuss these other conclusions of Dr. Gregor's.  Under the Act, the ALJ "must provide 'clear and convincing' reasons for rejecting the uncontradicted opinion of an examining physician."  Lester, 81 F.3d at 830-31.  As such, it was legal error for the ALJ to implicitly reject or overlook these select opinions of Dr. Gregor's without discussing them. Smolen, 80 F.3d at 1286.  Although it is possible that the ALJ would have rejected Dr. Gregor's conclusions for the same reasons he rejected Dr. Wahl's opinion, I must only review the reasons and explanations offered by the ALJ.  Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). The ALJ erred in failing to discuss Dr. Gregor's full opinion.

III.    Perform Other Work

The ALJ found that Burns could perform other work existing in significant numbers in the national economy.  Burns asserts that because the ALJ did not consider the limitations identified by Dr. Wahl related to Burns's decompensations, the hypothetical question put to the vocational expert (VE) was not complete.

The Commissioner has the burden in step five, and can satisfy this burden by eliciting the testimony of a VE with a hypothetical question that sets forth all the limitations of the claimant. Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).  The assumptions in the hypothetical question must be supported by substantial evidence.  Id.

Page 13 - OPINION AND ORDER

The opinion of the VE cannot be relied upon if the vocational hypothetical asked by the ALJ is not supported by the record.  Embrey v. Bowen, 849 F.2d 418, 423 (9th Cir. 1988).  When the vocational hypothetical does not reflect all of the claimant's limitations, the "expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy."  DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991) (citations omitted).

As set forth above, because the ALJ gave clear and convincing reasons for rejecting Dr. Wahl's opinion regarding Burns's job history, the ALJ's vocational hypothetical contained all of the applicable limitations identified by Dr. Wahl.  Nevertheless, because the ALJ neglected to discuss Dr. Gregor's full opinion, it is unclear whether the ALJ's hypothetical question would be different, thereby affecting the VE's opinion.  Accordingly, the VE's testimony does not constitute substantial evidence on which to base a denial of benefits.

IV.    Develop the Record

Burns contends that the ALJ failed to fully develop the record because he did not request statements from all medical sources.  20 C.F.R. §§ 404.1513(b)(6) and 416.913(b)(6).  Specifically, Burns asserts that the ALJ should have requested residual functional capacity assessments from each of Burns's medical sources.

The ALJ's duty to fully and fairly develop the record exists even when the claimant is represented by counsel.  Smolen, 80 F.3d at 1288.  However, the ALJ's duty is "triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."  Mayes v. Massanari, 262 F.3d 963, 968 (9th Cir. 2001), as amended 276 F.3d 453 (9th Cir. 2002), citing Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).  Nevertheless, the ALJ is "generally required to request that acceptable medical sources provide

these statements with their medical reports," SSR 96-5p, although "the lack of the medical source statement will not make the report incomplete." 20 C.F.R. § 404.1513 (b)(6).

_____There was no need for the ALJ to request residual functional capacity assessments from each of Burns's medical sources since the evidence was not "inadequate for [the ALJ] to determine whether [Burns is] disabled." See 20 C.F.R. § 404.1512(e).  Where such reports are lacking, I must focus "upon whether the decision of the ALJ is supported by substantial evidence in the existing record." Purvis v. Apfel, 57 F. Supp. 2d 1088, 1092 (D. Or. 1999).  Although the ALJ should request medical source statements, the record in this case contained sufficient information from which the ALJ could determine Burns's residual functional capacity.  He did not err in failing to request medical source statements.

V.    Appropriate Remedy

As discussed above, the ALJ erred in implicitly rejecting or overlooking Dr. Gregor's opinion with respect to Burns's ability to hold a job.  The question becomes whether the case should be remanded for further proceedings or for payment of benefits.

The court has the discretion to remand the case for additional evidence and findings or to award benefits. Smolen, 80 F.3d at 1292.  The court should credit evidence and immediately award benefits if the ALJ failed to provide legally sufficient reasons for rejecting the evidence, there are no issues to be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence is credited. Id.  Generally the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings. Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981).

The Ninth Circuit's discussion of remanding for additional review in times where the ALJ has improperly discredited a medical opinion is equally applicable here where the ALJ failed to consider the whole opinion of Dr. Gregor. The Ninth Circuit has stated, "In cases where the testimony of the vocational expert has failed to address a claimant's limitations as established by improperly discredited evidence, we consistently have remanded for further proceedings rather than payment of benefits." Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000) (internal citations omitted).

I have decided in this case that the ALJ erred by not adequately addressing Dr. Gregor's entire opinion. This error, however, does not lead me to conclude that payment of benefits is the proper remedy. If the ALJ accepts Dr. Gregor's opinion, in the absence of testimony from a vocational expert on this issue, it is not clear whether Burns is still considered capable of performing work existing in significant numbers in the national economy.

Therefore, because there are issues to be resolved before a determination of disability can be made, remand for further proceedings rather than for payment of benefits is the appropriate remedy.

## CONCLUSION

The decision is reversed. This action is remanded to the Commissioner under sentence four of U.S.C. § 405(g) for rehearing consistent with this opinion. Judgment will be entered.

IT IS SO ORDERED.

Dated this ___1st_____ day of March, 2006.


        ___/s/ Garr M. King_____
        Garr M. King
        United States District Judge

Page 16 - OPINION AND ORDER